UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| SUN DELIN, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil No. 6:25-cv-00033-GFVT-HAI ) ) |
| JOHN KINDER, *et al.*, | ) **ORDER** |
| Defendants. | ) ) ) |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on a series of Objections raised by Plaintiffs Sun Delin and Xu Qian to a Recommended Disposition & Order prepared by United States Magistrate Judge Hanly A. Ingram [R. 37.] Judge Ingram recommends that this Court grant Defendants Kinder and Holder's Motion for Summary Judgment and deny Plaintiffs Delin and Qian's Motion for Summary Judgment. For the reasons that follow, the objections of the Plaintiffs are **OVERRULED**, Judge Ingram's Recommended Disposition & Order [R. 37] is **ADOPTED** as and for the opinion of the Court, and Defendants Kinder and Holder's Motion for Summary Judgment [R. 31] is **GRANTED**.

**I**

The facts recited in the Defendants' Motion for Summary Judgment [R. 31] are undisputed, and are quoted verbatim below:

> Officer Jonathon Kinder is an officer with the Middlesboro Police Department who had 5 ½ years of experience as a law enforcement officer at the time of this incident. On January 29, 2025, Officer Kinder, whilst on patrol, observed a silver van traveling southbound on N. 19th Street in Middlesboro, Kentucky. Officer Kinder noticed that the vehicle registration plate seemed to be out of place and that the expiration decal was incorrect. Officer Kinder then radioed the

> Middlesboro Police Department dispatch and ran the registration plate through Link NCIC. The plate came back as "not on file." Officer Kinder then conducted a traffic stop due to the plate discrepancy. During the traffic stop, Officer Kinder ran the Vehicle Identification Number (VIN) through the Middlesboro Police Department dispatch. The dispatch informed him that the registration on the van had been canceled due to a failure to maintain insurance. The van was registered to Delin Sun [sic], 194 Lick Fork Road, Middlesboro, KY, 40965.
>
> Also, during the stop, Officer Kinder asked the driver, Sun Delin, for his operator's license and proof of insurance. Sun Delin provided Officer Kinder with his driver's license and an "Indemnity and Hold Harmless Insurance Bond" card[,] which appeared to be a fraudulent insurance card. Soon thereafter, Xu Qian arrived on scene to act as a translator and inquired as to the merits of the traffic stop. Xu Qian then asked for a supervisor and at some point thereafter, Captain Joe Holder arrived on scene.
>
> Thereafter, Officer Kinder completed a citation … [and then] removed the registration plate from Sun Delin's vehicle. The back of the registration plate had a sticker with the website, "pl8hero.com." Upon investigation, it was determined that the website advertises making novelty license plates. Both Defendants determined the website was used to create a fraudulent plate. After the traffic stop, Officer Kinder searched the DOT [number] of the plate which revealed that the DOT [number] was not authorized. Officer Kinder then seized the plate and the "insurance card."
>
> Plaintiff Xu Qian alleges that on February 17, 2025, he made a FOIA (Freedom of Information Act) request at the Middlesboro Police Department. Xu Qian alleges that the request was not processed timely and that the Middlesboro Police gave him false information about the FOIA request.

[R. 31 at 1-3.][1] Ultimately, as Judge Ingram observed, the January 29, 2025, traffic stop resulted in the Plaintiffs receiving a citation for seven violations "regarding the invalid license plate,

---

[1] As Judge Ingram observed, these facts are consistent with the Citation. Because the justification for the stop is a key fact of the Plaintiffs' objection analyzed below, we recite the language from the Citation here:

> While patrolling 19th st I noticed [] a silver van with a license plate that looked to be altered. I ran the plate on my MDT and it came back as no record. I made a traffic stop on the vehicle and advised the driver of the issue. I asked for insurance and the driver produced what appeared to be a fake insurance document. The registration plate is Kentucky 4291000 with a registration decal

expired registration, fraudulent insurance card, failure to maintain insurance, and failure to report change of address."[2] [R. 37 at 6; R. 31-2; R. 34-3.]

## II

To receive review of a magistrate judge's decision, a party must submit particularized objections to a report and recommendation within fourteen days of the date of service thereof. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984). General objections that require a judge's interpretation are insufficient to preserve issues. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). An objecting party must provide sufficient specificity "to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380. An "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply restates arguments already presented, is not an "objection" as that term is used in this context. *United States v. Vanover*, 2017 WL 1356328 (E.D. Ky. Apr. 11, 2017). In contrast, a specific objection must "explain and cite specific portions of the report which [the defendants] deem problematic." *Litteral v. Caraway*, 2019 WL 3006547, at *1 (E.D. Ky. 2019), July 10, 2019) (citing *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007)).

Even under the most generous construction of the objection that this Court can afford the Plaintiffs as *pro se* litigants, only two of the eight objections raised can be considered sufficiently specific to merit *de novo* review. See *Pilgram v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (acknowledging a "more 'liberal' pleading standard applicable to *pro se* litigants"). First, the

---

09102024. I ran the vin on the vehicle through dispatch and it came back as canceled for failure to maintain insurance.
[R. 31-2.]
[2] The Plaintiffs remain subject to a state criminal prosecution related to these citations. As Judge Ingram observed, "[t]he Bell County docket on eCourts (case # 25-T-00436) indicates the state case is 'held in abeyance until federal case is resolved.'" [R. 37 at 6, n.2.]

3

Plaintiffs contend that Judge Ingram improperly concluded that a factual dispute did not exist with respect to the validity of the license plate and insurance card, and, therefore, a genuine dispute of material fact remains. [R. 38 at 1.] Consequently, the Plaintiffs contend that the traffic stop was not supported by probable cause, and thus the fruits of the stop must be excluded. [R. 38 at 1.] While the Plaintiff lists these as two separate objections, they must be addressed and resolved together as they are inextricably linked.

### A

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment is a matter of law. Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "Instead, 'the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 731 (E.D. Ky. 2020), aff'd sub nom. *J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam Servs.*, 48 F.4th 721 (6th Cir. 2022) (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

Thus, the question of whether material facts remain in dispute is answered by turning to the substantive objection – namely, whether the Defendant officers' stop of Delin and Qian

4

violated the Fourth Amendment.[3]  The Fourth Amendment bars unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968).  The protections afforded by the Fourth Amendment apply to "even a brief detention short of a traditional arrest." *United States v. Hernandez-Hernandez*, 2018 U.S. Dist. LEXIS 208349, at *3-4 (E.D. Ky. Dec. 11, 2018) (citing *U.S. v. Brignoni-Pierce*, 422 U.S. 873, 878 (1975)).  In the context of traffic stops, "[a]n officer may stop a motorist if he has probable cause of a civil traffic infraction or reasonable suspicion of a crime." *Moore v. Oakland Cnty., Michigan*, 126 F.4th 1163, 1168 (6th Cir. 2025) (citing *Cruise-Gulyas v. Minard*, 918 F.3d 494, 496 (6th Cir. 2019).  Where there is no probable cause that the suspect committed a traffic violation, law enforcement must show reasonable suspicion of ongoing crime to lawfully stop a vehicle. *U.S. v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).  "So long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (quoting *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996)).

The substance of the Plaintiffs' central objection is most clearly articulated in the last line of the introductory paragraph: "The January 29, 2025, traffic stop and seizure, lacking probable cause, must be nullified to protect our Fourth Amendment rights, supported by *Mapp v. Ohio*'s exclusionary rule."  As Judge Ingram concluded, the Defendants' stop of Plaintiffs' vehicle was supported by probable cause to believe that a traffic violation was in progress.  Before stopping the vehicle, Officer Kinder observed it license plate and believed it appeared "altered."  Officer Kinder then ran the plate number through the Middlesboro Police Department database, which revealed that the plate was "not on file," prior to effectuating the traffic stop.  Under Kentucky

---

[3] Again, because resolution of the first objection can be resolved only by looking to the substance of the second objection, it is necessary that these two objections be considered together.

law, all vehicles in operation on the road must display a valid license plate and have a registration that is up-to-date. Ky. Rev. Stat. §§ 186.020, 186.070.

Once Officer Kinder observed clearly discernible irregularities in the license plate, and quickly verified his suspicions with a call to dispatch to confirm that the vehicle was unregistered, Officer Kinder had probable cause to believe a violation of state law had occurred. Thus, Officer Kinder was authorized to stop Sun Delin's vehicle at that time without violating the Fourth Amendment. Even if the license plate and insurance card were entirely valid, as Plaintiffs suggest, that does not change the fact that their suspicious appearance, coupled with information from dispatch showing an invalid registration, gave rise to probable cause to stop the vehicle. In turn, because the true validity of the license plate and insurance card have no bearing on the question of whether the stop was supported by probable cause, there is not a genuine dispute of material fact to render summary judgment improper. And, in stopping Delin's vehicle, Officer Kinder did not violate Plaintiff's Fourth Amendment protections. The Court, therefore, agrees with Judge Ingram's analysis and conclusion on this issue, and overrules the Plaintiff's objections thereto.

B

The remainder of Plaintiffs' objections constitute "general objections," which are "insufficient to preserve issues" for review by the district judge. *United States v. Berry*, 2024 U.S. Dist. LEXIS 66375, at *3 (E.D. Ky. Apr. 10, 2024) (citing *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004)). Nevertheless, for the sake of completeness and clarity, we shall address each generalized objection briefly in turn.

The Plaintiffs nominal third objection suggests that Judge Ingram failed to uphold the doctrine of "constitutional supremacy," by purportedly misapplying *Marbury v. Madison*, 5 U.S.

137 (1803).  Plaintiffs' objection misinterprets the holding of *Marbury* and its applicability to the present case.  The holding of *Marbury* counts itself among the most venerable in the history of American constitutional law.  Chief Justice Marshall, writing for the Court, endowed the Supreme Court with the power of judicial review, permanently elevating the role of the judiciary in our delicate system of checks and balances.  As *Marbury* held, "[i]t is emphatically the province and duty of the judicial department to say what the law is."  *Marbury*, 5 U.S. at 177.  But this judicial review power is not without its limits. See *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 645 (E.D. Ky. 2021) ("But the Court is nonetheless limited to the law…").  *Marbury*, therefore, presents the Court with the enormous responsibility of determining whether certain laws are repugnant to the U.S. Constitution, interpreting the meaning of the law, and applying it accordingly.  It does not, however, provide the Court with the ability to provide redress where no legal violation has occurred, as here.  Consequently, not only does the Plaintiffs' objection premised on *Marbury v. Madison* lack specificity, but it also lacks a legal foundation.

      Plaintiffs next baldly assert "[q]ualified immunity error," claiming "*Marbury*'s nullification and *Mapp*'s exclusion establish limits – defendant's actions, if unconstitutional, void immunity."  [R. 38 at 2.]  This contention is general in nature, as it fails to state how exactly Judge Ingram improperly analyzed the applicability of qualified immunity to the case at bar.  In fact, it points to no flaws in Judge Ingram's recommended order, other than a disagreement with his overall conclusion.  Nonetheless, even if this objection were particularized, we need not belabor this point because without a constitutional violation, we need not reach the qualified immunity analysis.  And, for the reasons stated above, we find that Judge Ingram properly

7

concluded that Defendants Kinder and Holder did not violate the Plaintiffs' constitutional protections during the stop.

Next, Plaintiffs state "Cowan's reassignment during an intimidation investigation (attached notice) evidences ongoing harm, relevant to our claims." [R. 38 at 2.] It is altogether unclear what this objection pertains to, or how it is relevant to the disposition of this case. As Judge Ingram concluded in the Recommended Disposition & Order, "[t]his fact is not relevant because Cowan is not a party to this action." [R. 37 at 8.] Thus, since Lt./Det. Cowan is not a party to this action, whether he was reassigned during an investigation is entirely immaterial to the present suit against Officers Kinder and Holder related to their conduct.

Plaintiffs also contend that "[d]enial of Compel and Sanctions ignores incomplete interrogatory responses and lawful seizure disputes." [R. 38 at 2.] Again, this is a conclusory statement insufficient to establish a particularized objection. The Plaintiffs' motion fails to elaborate further, and it remains unclear in what way Judge Ingram's orders with respect to either compel or sanctions are purportedly deficient. Judge Ingram made several observations in evaluating the Plaintiffs' motions to compel and for sanctions. First, he concluded that an order requiring Defendants to "respond fully and completely to all outstanding interrogatories and requests for admissions," was improper because the Defendants had answered those interrogatories on June 2, 2025, and their responses were accessible in the record. [R. 37 at 13.] He also concluded that an order compelling the Commonwealth to return the seized license plate was also improper because the Commonwealth can lawfully "retain the plate as evidence during the pendency of the underlying state criminal action." *Id*. at 14. And, furthermore, "there is no federal vehicle for ordering a state to return property in its custody." *Id*. Lastly, Judge Ingram denied Plaintiffs' Motion for Sanctions for several reasons, including the fact that Defendants

8

possessed the legal authority to seize and retain the Plaintiffs property, that Defendants did not fail to comply with discovery, and because "a federal civil-rights suit is not a forum for a citizen to attempt to enforce departmental policies." *Id*. at 14-15.  Absent any evidence proffered by Plaintiffs to suggest otherwise, this Court takes no issue with Judge Ingram's findings.

Lastly, the Plaintiffs assert "[t]o ensure due process and constitutional fidelity under Marbury, we move under FRCP 34 to compel production of the oaths of office" for Judge Ingram, the undersigned, and defense counsel "within 7 days." [R. 38 at 2.]  First, and foremost, a party to a case cannot serve a Rule 34 interrogatory upon the presiding judge in this case requiring disclosure. See *In re Irion*, 2025 U.S. Dist. LEXIS 156492, at *45 (E.D. Tenn. Aug. 4, 2025) (holding that Fed. R. Civ. P. 11 did not apply to a presiding judge in a case).  Yet, fortunately for the Plaintiffs, the oath of office required to be taken by federal judges is established by Congress and is publicly accessible.  See 28 U.S.C. § 453.  Likewise, the oath taken by all attorneys upon admission to practice law in the Commonwealth of Kentucky is also publicly accessible and is enshrined in Section 228 of the Kentucky Constitution.  Consequently, rather than attempting to compel the Court to provide this information, Plaintiffs should reference this federal statute and state constitutional provision for the information they seek.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Delin and Plaintiff Qian's Objections **[R. 38; R. 39]** are **OVERRULED**;

2. Magistrate Judge Ingram's Recommended Disposition & Order **[R. 37]** is **ADOPTED** as and for the opinion of the Court;

3.  The Motion for Summary Judgment filed by Defendants John Kinder and Joe Holder **[R. 31]** is **GRANTED**;

4.  The Motion(s) for Summary Judgment filed by Plaintiffs Sun Delin and Xu Qian **[R. 27; R. 30]** is **DENIED**;

5.  Plaintiffs' Motion to Compel Discovery Responses and Return of Property **[R. 26]** is **DENIED**;

6.  Plaintiffs' Motion for Sanctions **[R. 28]** is **DENIED**;

7.  Judgment in favor of Defendants Kinder and Holder shall be promptly entered.

This the 24th day of January 2026.

Gregory F. Van Tatenhove
United States District Judge